IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| DANIEL C. SUSOTT,<br><br>Plaintiff,<br><br>vs.<br><br>EVAN AULD-SUSOTT, individually, as the General Partner for THE SUSOTT FAMILY LIMITED PARTNERSHIP, and as Trustee of the (1) IRREVOCABLE LIFE INSURANCE TRUST OF JOHN L. SUSOTT AND KATHRYN C. SUSOTT UAD 8/17/1988 AS RESTATED, EXEMPT TRUST FBO DANIEL C. SUSOTT, and (2) IRREVOCABLE LIFE INSURANCE TRUST OF JOHN L. SUSOTT AND KATHRYN C. SUSOTT UAD 8/17/1988 AS RESTATED, NON-EXEMPT TRUST FBO DANIEL C. SUSOTT; and JOHN L. SUSOTT,<br><br>Defendants. | Civil No. 25-00391-MWJS-KJM<br><br>ORDER LIFTING STAY OF PROCEEDINGS, GRANTING DEFENDANTS' MOTION TO DISMISS, AND EXPUNGING NOTICE OF PENDENCY OF ACTION |

## INTRODUCTION

This case is the latest chapter in a legal saga spanning over a decade. In 2010, Plaintiff Daniel C. Susott transferred ownership of a Kauaʻi apartment to Lauryn Galindo, a nonparty to this action. That transfer set off a cascade of litigation that has already produced three separate lawsuits in this court, two final judgments, and multiple trips to the Ninth Circuit. In this lawsuit—the third of the cases between the

parties—Daniel seeks to quiet title to the Kauaʻi apartment, which he claims was unlawfully taken away from him in proceedings before a different judge in this court ("the second case"), and to hold his brother, Defendant John L. Susott, and nephew, Defendant Evan Auld-Susott, liable for intentionally interfering with the contract between him and Galindo by filing the lawsuit that initiated the second case.

Throughout the pendency of this action, the parties have been actively litigating an appeal of the final judgment in the second case before the Ninth Circuit. Because of the substantial similarity between the issues in this case and the second case, this court stayed these proceedings pending the Ninth Circuit's decision in the second case. The appeals court has since issued its mandate in the second case, and so John and Evan now move to reopen this case, expunge the *lis pendens* obtained by Daniel against the Kauaʻi apartment, and to dismiss this action altogether. For the reasons discussed in this order, the court grants Defendants' requested relief.

## BACKGROUND

The factual and procedural history of the parties' dispute is discussed in detail in the background section of *Auld-Susott v. Galindo*, No. 20-00270, 2021 WL 3669307, at *1-4 (D. Haw. Aug. 18, 2021), *vac'd and remanded*, 2023 WL 2929317 (9th Cir. Apr. 13, 2023), and *Auld-Susott v. Galindo*, No. 20-00270, 2023 WL 4763240 (D. Haw. July 26, 2023), at *1-2, *aff'd*, 2025 WL 484620 (9th Cir. Feb. 13, 2025). The court will not recount them here except as necessary to give context to its ruling.

In April 2010, Daniel transferred the Kauaʻi apartment to Galindo. Some time later, Evan and John "obtained substantial judgments in California state courts against Daniel." *Auld-Susott*, 2025 WL 484620, at *1. And in an effort to satisfy those judgments, Evan and John brought suit against Galindo in the District of Hawaiʻi, "seeking to void the 2010 transfer of the apartment as a fraudulent conveyance." *Id.* That lawsuit (the "first case") concluded with a final judgment in Evan and John's favor, resulting in the reversion of the property to Daniel. *Auld-Susott v. Galindo*, No. 16-00450, 2019 WL 993620 (D. Haw. Feb. 28, 2019), *aff'd*, 854 F. App'x 217 (9th Cir. 2021).

Within days of the 2019 judgment, however, "Daniel again deeded the property to Galindo," leading Evan and John to initiate yet another action—the second case, *Auld-Susott v. Galindo*, No. 20-cv-00270 (D. Haw.)—seeking to unwind the transfer from Daniel to Galindo as a fraudulent conveyance. *Auld-Susott*, 2025 WL 484620, at *1. After years of litigation and several appeals, the second case concluded with a final judgment again entered in Evan and John's favor. *See Auld-Susott*, 2023 WL 4763240, *reconsideration denied*, 2023 WL 5529785 (D. Haw. Aug. 28, 2023). The final judgment in the second case included two features relevant here: first, it dismissed Daniel from the case and entered judgment against Galindo, and second, it imposed a constructive trust on the Kauaʻi apartment and ordered it to be deeded to Evan and John. *See id.* at *2-3, *6-7.

Daniel appealed the decision in the second case to the Ninth Circuit, principally arguing that because the court had dismissed him from the case at the time it imposed the constructive trust over the Kaua'i apartment, it had lacked personal jurisdiction over him and had therefore deprived him of ownership in violation of his federal due process rights. Not content to wait for the Ninth Circuit's decision, Daniel then also filed an action in Hawai'i state court seeking to quiet title to the Kaua'i apartment and to hold Evan and John liable for intentionally interfering with his contract with Galindo, based on their initiation of the second case and the resultant rescission of the Kaua'i apartment transfer. Dkt. No. 1, at PageID.7-13. Evan and John removed the suit to federal court on the basis of diversity jurisdiction shortly thereafter. *See id.* at PageID.1-7. That is the lawsuit—the third case between these parties—now pending before this court.

This court stayed the case pending the outcome of the Ninth Circuit's decision in the appeal of the second case, based on its determination that the second case involved the same parties and facts and presented issues that would be helpful in resolving the quiet title claim in the instant case. Dkt. No. 22. After the court entered its stay, Daniel filed a "Notice of Pendency of Action" (or "NOPA"), which had the effect of recording a *lis pendens* against the Kaua'i apartment based on Daniel's pending quiet title claim in this case. Dkt. No. 24.

The Ninth Circuit issued its decision in the second case—*Auld-Susott v. Galindo*, 2026 WL 1864854 (9th Cir. June 29, 2026)—in June 2026, and the mandate issued several weeks later. In its ruling, the Ninth Circuit described Daniel's argument that "the district court needed to have personal jurisdiction over Daniel Susott to appoint a constructive trustee over the property at issue and that his due process rights were violated when he was dismissed by the court and then purportedly divested of his ownership rights" as "hav[ing] no merit" and affirmed the district court's order. *Auld-Susott*, 2026 WL 1864854, at *1. Evan and John then moved to lift the stay in this case and to expunge the NOPA on the basis that the Ninth Circuit's decision eliminated any basis for maintaining it. Dkt. No. 26. They also ask the court to decide their pending motion to dismiss, Dkt. No. 5, which was fully briefed prior to the entry of the stay, *see* Dkt. No. 14 (Daniel's opposition to motion to dismiss), Dkt. No. 15 (Evan and John's reply). Daniel did not oppose the motion to lift the stay, but opposed the motion to expunge the NOPA, Dkt. No. 28, and Evan and John replied, Dkt. No. 29.

## DISCUSSION

### A. Defendants' Motion to Dismiss is Granted

Evan and John seek to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 5. Under Rule 12(b)(6), all allegations of material fact in the pleadings are taken as true and construed in the light most favorable to the plaintiff, and the court's task is to determine whether the complaint contains

"sufficient factual matter, accepted as true, to state claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Setting aside 'labels and conclusions,' the complaint's factual allegations must be 'enough to raise a right to relief above the speculative level.'" *Waite v. Honolulu Liquor Comm'n*, Civil No. 23-00356, 2024 WL 4851600, at *2 (D. Haw. Nov. 21, 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And if the complaint fails to set forth a "cognizable legal theory" or to allege sufficient facts to support a cognizable claim, it must be dismissed. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017).

In their motion to dismiss, Evan and John raise two main arguments. First, they contend that Daniel's quiet title claim—including his personal jurisdiction and due process arguments—is precluded by the final judgment in the second case. Second, they argue that the intentional interference with contractual relations count fails to state a claim because Daniel cannot establish the existence of a contract with Galindo as a matter of law. The court will consider each argument in turn.

The complaint includes the following facts in support of the quiet title claim. After Daniel's transfer of the Kaua'i apartment was voided in the first case, he again transferred the apartment to Galindo in 2019. Dkt. No. 4, at PageID.28-30. Evan and John then initiated the second case, which culminated in the avoidance of the 2019 transfer and ownership of the apartment being returned to Daniel, albeit with the imposition of a constructive trust over the property. But because Daniel had been

dismissed in the same order in which the court imposed the constructive trust, the complaint asserts that the "federal court lacked personal jurisdiction over Daniel to divest him of his ownership in the Apartment as of [the date of the final judgment]." *Id.* at PageID.30. And according to the complaint, this amounted to a denial of "due process under the Constitution of the State of Hawaii by failing to give [Daniel] any reasonable opportunity to defend his March 5, 2019 transfer of the Apartment" or to defend his ownership of it. *Id.* Based on this alleged constitutional error, Daniel seeks to quiet title to the apartment and asks this court to enter a declaratory judgment finding that "he is the owner of the Apartment because the federal court lacked personal jurisdiction over him to divest him of his ownership of the Apartment and/or because it denied him such due process in doing that." *Id.* at PageID.30-31.

The complaint makes clear that the only basis for the quiet title claim is the court's purported lack of personal jurisdiction over Daniel at the conclusion of the second case, resulting in the deprivation of the apartment without due process. *See* Dkt. No. 4, at PageID.26-32. And Daniel has cast the issues and arguments in favor of his title claim as inseparable from the due process argument presented in the second case: indeed, instead of offering a distinct argument in opposition to Evan and John's motion to dismiss, he has incorporated the entirety of his brief seeking reconsideration of the order that was ultimately appealed to the Ninth Circuit. *See* Dkt. No. 14, at PageID.191-

196 (providing an "excerpt from that memorandum" and describing it as "fully support[ing]" his position).

The problem with that argument is that the Ninth Circuit has fully considered and rejected it. That court described Daniel's argument on appeal as being that "the district court needed to have personal jurisdiction over [him] to appoint a constructive trustee over the property at issue and that his due process rights were violated when he was dismissed by the court and then purportedly divested of his ownership rights." *Auld-Susott*, 2026 WL 1864854, at *1. That is precisely the argument Daniel makes in this suit. And after considering the argument, the Ninth Circuit concluded that it had "no merit." *Id.* As the Ninth Circuit explained:

> The district court did not need to have personal jurisdiction over Daniel Susott to impose the constructive trust, because the constructive trust is imposed against the transferee, Galindo, not Daniel Susott. *See* Haw. Rev. Stat. § 651C-7(a)(3)(B) (allowing "[a]ppointment of a receiver to take charge of the asset transferred or of other property of the *transferee*" (emphasis added)). Further, there was no violation of Daniel Susott's due process rights. After dismissing him, the district court reverted title *back* to Daniel Susott and he was ordered to hold the property in trust, for the benefit of plaintiffs. Daniel Susott does not explain how his due process rights were violated through the imposition of this constructive trust. The district court therefore properly imposed the constructive trust against Galindo as the transferee and did not violate Daniel Susott's due process rights.

*Id*. Daniel's personal jurisdiction and due process arguments are therefore squarely foreclosed by the Ninth Circuit's decision in *Auld-Susott*.

Daniel attempts to avoid that conclusion by asserting that the ruling "left significant unanswered questions . . . as to the Hawaii constitutional issues" raised in

this case, Dkt. No. 28, at PageID.334, but he does not explain what those questions are or why they are material to his quiet title claim. To the contrary, he repeatedly acknowledges that the "federal constitutional due process violations" discussed in the Ninth Circuit's decision are "similar to the Hawaii constitutional due process violations contended in this case," *id.* at PageID.338, asks the court to treat "[d]ue process rights under Hawaii's Constitution" as "similar to due process rights under the United States Constitution" in his opposition to the motion to dismiss, Dkt. No. 14, at PageID.191 n.1, and suggests that federal due process analysis "probably would be persuasive to [Hawai'i courts] and followed." Dkt. No. 18-1, at PageID.215-16. That is an understandable position for Daniel to take, given that "[f]ederal case-law on the due process clause of the United States Constitution is persuasive authority when interpreting the due process clause of the Hawai'i Constitution." *Rodrigues v. Newport Lending Corp.*, Civ. No. 10-00029, 2010 WL 4960065, at *4 (D. Haw. Nov. 29, 2010) (cleaned up); *see also Richardson v. City & Cnty. of Honolulu*, 802 F. Supp. 326, 344 (D. Haw. 1992) (noting that "the legal analysis" of the state and federal due process clauses has been "essentially the same"). And even assuming that some substantive distinction between the two clauses might be relevant here, the fact remains that the Ninth Circuit expressly ruled that the "district court did not need to have personal jurisdiction over Daniel Susott to impose the constructive trust" based on its interpretation of Hawai'i law, without regard to federal constitutional principles. *Auld-Susott*, 2026 WL 1864854,

at *1. There is no reason to believe Daniel could prevail on his state due process theory, given that this court is bound by the Ninth Circuit's determination that it was not improper as a matter of state law for the court to impose the constructive trust over the apartment without personal jurisdiction over Daniel.

Ultimately, Daniel has offered no basis for the court to conclude that the analysis of the due process clause of the Hawaiʻi Constitution would meaningfully differ from the analysis under the United States Constitution, or that the Ninth Circuit's rejection of his due process argument is not dispositive of the sole argument in favor of his quiet title claim. In light of the Ninth Circuit's decision in *Auld-Susott*, the court concludes that Daniel has failed to state a cognizable legal theory in support of his quiet title claim. And because it appears that Daniel could allege no set of facts that would support the quiet title count, the court declines to grant leave to amend. *See Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004); *Oregon Clinic, PC v. Fireman Fund's Ins. Co.*, 75 F.4th 1064, 1073-74 (9th Cir. 2023).

That leaves only Daniel's claim for intentional interference with contractual relations. The complaint asserts a single theory for how Evan and John committed this tort against Daniel: "[w]hen Evan . . . and John filed the Second Case in the federal court and caused Ms. Galindo to lose the Apartment had deeded to her on March 5, 2019, they intentionally interfered with Daniel's performance of his contract with Ms. Galindo, which included the requirement that he deed the Apartment to her; they

prevented him from performing it." Dkt. No. 4, at PageID.33. And although the complaint goes on to offer different explanations for *why* the initiation of the second case was improper, it does not offer any other factual basis for *how* Evan and John intentionally interfered with the contract between Daniel and Galindo. *See id.* at PageID.33-34.

In order to establish a claim of intentional (or tortious) interference with contractual relations, a plaintiff must establish six elements: "(1) a contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach the contract; (4) the absence of justification on the defendant's part; (5) the subsequent breach of the contract by the third party; and (6) damages to the plaintiff." *Lee v. Aiu*, 85 Haw. 19, 32, 936 P.2d 655, 668 (1997). Evan and John argue in their motion to dismiss that no valid contract between Galindo and Daniel respecting the transfer of the Kaua'i apartment has ever existed—a finding reflected in the final judgments in the first and second case—and so, as a matter of law, Daniel cannot establish the first element of his interference claim. Dkt. No. 15, at PageID.203-04.

The court is conscious of Daniel's representation that "he has never been given his day in court to be able to prove" his side of the apartment transfer, including whether a valid contract existed between himself and Galindo, and that he therefore should not be bound by the district court's judgments finding that no contract existed.

*See* Dkt. No. 4, at PageID.29-30. But Evan and John's response to that representation is not without some force. "It is essential, to constitute a contract, that there shall be two parties bound by it." *Planters' Bank v. Sharp*, 47 U.S. 301, 336 (1848) (opinion of McLean, J.). Accordingly, it is difficult to understand how Daniel could prove the existence of a valid contract when Galindo—the other party to be bound by that contract—is also unquestionably bound by a final judgment holding that no such contract existed.

But the court need not go so far in order to dismiss the intentional interference claim, because the complaint on its face fails to establish at least two other elements. First, the complaint does not allege any facts suggesting that Evan and John intentionally induced "the third party to breach the contract." *Lee*, 85 Haw. at 32, 936 P.2d at 668. To the contrary, it expressly alleges that they "intentionally interfered with *Daniel's performance* of his contract with Ms. Galindo" and thereby "prevented *him* from performing it." Dkt. No. 4, at PageID.33 (emphases added). It follows that even if the court were to accept that a contract existed between Daniel and Galindo, the complaint still would not include sufficient factual material to state a claim of intentional interference with contractual relations, because it offers no basis to conclude that any third party was induced to breach. *See, e.g.*, *English v. City & Cnty. of Honolulu*, Civil No. 04-00108, 2006 WL 8436473, at *4 (D. Haw. July 6, 2006) (explaining that in order to prevail on a claim for tortious interference with contractual relations, "a plaintiff must

establish the intentional inducement *of a third party* to breach a contract" (emphasis added)).

Second, the complaint does not contain sufficient factual matter to establish that Evan and John acted without justification in initiating the second case. In order to establish a prima facie case of intentional interference with contractual relations, a plaintiff must show that "the defendant acted without proper justification." *Kutcher v. Zimmerman*, 87 Haw. 394, 406, 957 P.2d 1076, 1088 (Haw. Ct. App. 1998) (cleaned up). That showing may be made by demonstrating that the "interference was tortious, illegal, or unconstitutional, and/or involved violations of statutes, regulations, or recognized common-law rules." *Id.* at 407, 957 P.2d at 1089. Here, the alleged interference took the form of Evan and John's initiation and successful prosecution of the second case. Absent atypical circumstances, the initiation of a lawsuit cannot readily be characterized as "tortious, illegal, or unconstitutional" conduct or otherwise legally "unjustified." And it certainly cannot be so characterized where, as here, the defendant filer prevails in the lawsuit and has the final judgment affirmed by the court of appeals, and where there is no evidence that this result was procured through fraud or other unlawful means. Indeed, courts have declined to find an absence of justification in cases where the alleged tortious conduct involved the mere invocation of legitimate *precursors* to the pursuit of a legal remedy. *See Rossi v. Motion Picture Ass'n of Am.*, 391 F.3d 1000, 1006 (9th Cir. 2004) (holding that a defendant's "compliance with

the notice and takedown procedures" in the Digital Millennium Copyright Act met the "standards for 'justification'" under Hawai'i law); *cf. Trendtex Fabrics, Ltd. v. NKTN, Inc.*, 735 F. Supp. 3d 1260, 1279 (D. Haw. 2024) (finding, in a case involving a claim for the related state law tort of tortious interference with prospective business advantage, that sending cease-and-desist letters in the good faith belief of an ongoing legal violation was neither improper nor wrongful). It follows that the successful vindication of a party's rights through the judicial process provides an even stronger reason to believe that the party's conduct was justified.

Because the complaint does not include sufficient factual allegations to establish the existence of an inducement of a third party to breach the alleged contract, or to establish the absence of justification, the court concludes that it fails to state a claim for intentional interference with contractual relations. And there is no realistic possibility that Daniel could cure the deficiencies in the intentional interference with contractual relations claim; after all, the parties have thoroughly litigated this dispute, and if Daniel had any basis to assert that Defendants' success in the second case was a result of fraud or other unlawful conduct, he unquestionably would have surfaced it by now. There is simply no realistic possibility that Daniel would have declined to mention any such circumstances in his recent appeal to the Ninth Circuit, or at a minimum in his most recent submission to this court following his loss in the Ninth Circuit. Nor does he suggest otherwise. Accordingly, the court will not grant Daniel leave to amend. *See*

*Miller*, 358 F.3d at 622; *Oregon Clinic*, 75 F.4th at 1073-74. The First Amended Complaint is DISMISSED with prejudice.

**B. Defendants' Motion to Expunge the NOPA Is Granted**

Having dismissed the complaint with prejudice, the court next turns to Defendants' motion to expunge. Hawai‘i state law provides that in "any action concerning real property or affecting the title or the right of possession of real property, the plaintiff . . . may record in the bureau of conveyances a notice of the pendency of the action"—or "NOPA," for short—describing "the object of the action or claim for affirmative relief, and a description of the property affected thereby." Haw. Rev. Stat. § 634-51; *see also* Haw. Rev. Stat. § 501-151.[1] Courts treat NOPAs and *lis pendens* alike, *see, e.g.*, *Sports Shinko Co., Ltd. v. QK Hotel, LLC*, 457 F. Supp. 2d 1121, 1125 n.6 (D. Haw. 2006), insofar as both "operate[] to cause the grantee to take the property subject to any judgment rendered in the action supporting the *lis pendens*." *S. Utsunomiya Ents., Inc. v. Moomuku Country Club*, 75 Haw. 480, 502, 866 P.2d 951, 963 (1994). Because a NOPA creates a cloud on title and can have "a substantial adverse impact on the grantee's use of or benefit in the land," the Hawai‘i Supreme Court has recognized that "the practical effect of a recorded *lis pendens* is to render a defendant's property unmarketable and

[1] The notice does not specify the provision under which the NOPA falls. Although § 634-51 "is directed to unregistered land" and § 501-151 is directed to registered land, "no distinction has been made between the two *lis pendens* statutes" and Hawai‘i courts treat them alike for the purposes of motions to expunge. *See Valvanis v. Milgroom*, 529 F. Supp. 2d 1206, 1210 n. 3 (D. Haw. 2007).

unusable as security for a loan" and to exert considerable "financial pressure" on the property owner. *Id.* (cleaned up).

Courts considering a motion to expunge a NOPA "should generally restrict their review to the face of the complaint," without regard to the likelihood of success on the merits. *Id.* at 505, 866 P.2d at 964; *see also Sports Shinko Co.*, 457 F. Supp. 2d at 1125 (citing *Knauer v. Foote*, 101 Haw. 81, 83, 63 P.3d 389, 391 (2003)). Accordingly, the court's inquiry is typically limited to an analysis of whether the action "*directly* seek[s] to obtain title to or possession of real property." *Utsunomiya*, 75 Haw. at 510, 866 P.2d at 966 (original emphasis). Daniel's quiet title claim at least arguably sought to directly obtain title or possession of the Kaua‘i apartment, but the dismissal of that claim means that the complaint on its face contains no basis for obtaining title or possession of that property. Indeed, the NOPA itself acknowledges that Daniel will only regain title to the property "[i]f the Judgment [in the second case] is reversed by the Ninth Circuit court as to this real property," Dkt. No. 24, at PageID.283, and as discussed above, the complaint similarly offers no alternative basis for Daniel to prevail on his quiet title claim aside from his hope that the Ninth Circuit would rule in his favor. That event has not come to pass, and so the complaint on its face presents no ground on which Daniel might obtain title or possession to the Kaua‘i apartment.

"Where a trial court grants judgment against a party on a claim on which the *lis pendens* is based," the judgment "extinguishes the claim, and thus the *lis pendens* is no

longer based on any action concerning real property." *Sylvester v. Young*, 120 Haw. 417, 209 P.3d 194 (Haw. Ct. App. 2009) (citing *TSA Int'l Ltd. v. Shimizu Corp.*, 92 Haw. 243, 265-67, 990 P.2d 713, 735-37 (1999)). And although a party may still appeal this court's judgment, that "does not save a *lis pendens* from expungement." *Id.* Mindful of the state courts' admonition that "trial courts [should] not . . . tolerate" efforts to use the *lis pendens* to prevent courts from "effectively conclud[ing] litigation," *Harada v. Ellis*, 4 Haw. App. 439, 444, 667 P.2d 834, 838 (Haw. Ct. App. 1983), the court GRANTS the motion to expunge the NOPA. *Accord Fujikawa v. One West Bank, FSB*, Civil No. 11-00151, 2012 1982495, at *2 (D. Haw. May 30, 2012) (expunging a NOPA after dismissing claims challenging title to real property).

## CONCLUSION

For the foregoing reasons, the court LIFTS the stay in this case, GRANTS Defendants' motion to dismiss and DISMISSES the claims with prejudice, and GRANTS Defendants' motion to expunge the NOPA. This order resolves all pending motions.

IT IS SO ORDERED.

DATED: September 11, 2026, at Honolulu, Hawai'i.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge